IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

STEPHEN M. BEVERLY,
For himself and on behalf of all
similarly situated individuals
        Plaintiff,
v.

WAL-MART STORES, INC.,

        Defendant.

Civil Action No. 3:07CV469

DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), by and through its attorneys, submits this Memorandum of Law in Support of its Motion for Summary Judgment on the sole count of Plaintiff Stephen M. Beverly's Complaint.

## I. INTRODUCTION

Plaintiff alleges in his purported nationwide class action lawsuit that Wal-Mart violated the notice provisions for use of criminal background checks under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Specifically, Plaintiff alleges that in September of 2005, Wal-Mart "denied employment to him" based on information from a criminal background report without providing him the opportunity to review and refute that information. (Complaint ¶¶ 1, 24). Plaintiff has now admitted to the contrary. Plaintiff not only

received a copy of the criminal background report at issue and had an opportunity to dispute the report, <u>but he did so successfully</u>, by contending that what appeared on his criminal background report as a felony was in fact a misdemeanor. Based on the corrected information, Wal-Mart <u>hired</u> Plaintiff. Plaintiff voluntarily quit approximately two weeks later, but is currently working at another Wal-Mart location.

Plaintiff would not even have needed to dispute the information had he been honest with Wal-Mart from the start. Plaintiff authorized Wal-Mart to order the criminal background check. The authorization form asked Plaintiff to disclose any prior convictions. In 2005, Plaintiff indisputably failed to disclose his prior misdemeanor conviction. In 2007, Plaintiff was truthful about his prior misdemeanor conviction and was hired without having to make a dispute. Respectfully, the Court should not countenance Plaintiff's improper efforts to manufacture a nationwide class action lawsuit that arises squarely out of his own misrepresentations to Wal-Mart during the hiring process in 2005.

As set forth more fully below, there exists no genuine issue as to any material fact and Wal-Mart is entitled to judgment as a matter of law. Under the Agreed Order on Discovery Schedule entered by the Court on November 16, 2007, the parties have had an opportunity to take discovery and the time is now ripe for Wal-Mart's summary judgment motion as to Plaintiff's individual claim. The Court should dismiss the action and enter judgment for Wal-Mart.

## II. STATEMENT OF UNDISPUTED AND MATERIAL FACTS[1]

### A. Plaintiff Applied for a Job at Wal-Mart, Authorized a Criminal Background Check and Failed to Disclose His Prior Misdemeanor Conviction

On August 18, 2005, Plaintiff applied for a position as an associate at the Wal-Mart store located in Newport News, Virginia. (See Deposition Transcript of Stephen M. Beverly, November 29, 2007, attached hereto as Exhibit "A" ("Plaintiff's Deposition"), at 54-55; Deposition Ex. D11 (attached hereto as Exhibit "C"). He returned for an interview on August 25, 2005. (See Plaintiff's Deposition at 63). At that time, Plaintiff completed and signed various documents, including a Fair Credit Reporting Act Authorization Form. (See Plaintiff's Deposition at 62, 66; Deposition Exs. D10, D12 (attached hereto as Exhibits "D" and "E," respectively)). The Fair Credit Reporting Act Authorization Form notified Plaintiff that Wal-Mart would be conducting a criminal background check and required the disclosure of all criminal convictions. (See Deposition Ex. D10) (Exhibit "D"). The form specifically asks the applicant to disclose any misdemeanor convictions. (See id.). Plaintiff failed to disclose that he had been convicted of a misdemeanor for failure to return a rental car in 1999. (See id.; Plaintiff's Deposition at 66). At the conclusion of his August 25 interviews, Plaintiff received a conditional job offer. The offer was contingent upon successful completion of a criminal background check and drug screening. (See Plaintiff's Deposition at 64).

---

[1] The facts set forth herein are set forth in the transcripts of the depositions of Plaintiff and of Wal-Mart's Rule 30(b)(6) representative, Julie Martin, which the Court may accept pursuant to Fed. R. Civ. P. 56(a) and Fed. R. Civ. P 56(e), as well as from certain of Defendant's exhibits marked and authenticated during the deposition of Plaintiff. Excerpts from the transcripts of the depositions are attached hereto as Exhibit "A" (Plaintiff) and Exhibit "B" (Martin), respectively, and the referenced deposition exhibits, identified by the prefix "D" and a number ("Ex. D_"), are attached hereto as Exhibits "C" through "J" for the Court's reference. Exhibits A through I have been submitted under seal pursuant to LCvR 5 because they contain confidential and proprietary information raising privacy concerns.

### B. Plaintiff Received Notice of the Results of His Criminal Background Check and Successfully Disputed Those Results

Wal-Mart ordered a criminal background check from ChoicePoint Workplace Solutions ("ChoicePoint") and delegated to ChoicePoint the administrative task of providing Plaintiff required notices on Wal-Mart's behalf. (See Deposition Transcript of Julie Martin, November 28, 2007, attached hereto as Exhibit "B" (hereinafter "Martin Deposition"), at 123, 147, 154). ChoicePoint conducted the background search for Wal-Mart, and uncovered database information that Plaintiff had a felony conviction for failure to return a rental car. (Id. at 138.)

On September 1, 2005, ChoicePoint, on behalf of Wal-Mart, sent Plaintiff a letter enclosing the criminal background check report showing his 1999 conviction as a felony along with a statement of Plaintiff's rights under the FCRA. (See Deposition Ex. D2 (the "September 1 letter") (attached hereto as Exhibit "F")). The letter, postmarked September 1, 2005, explained to Plaintiff that the report included public record information that was "likely to have an adverse effect on your ability to obtain employment" and explained that the report had been prepared by ChoicePoint for Wal-Mart. (Id.; see also Deposition Ex. D18 (attached hereto as Exhibit "J") and Plaintiff's Deposition at 73-74). It also emphasized that Plaintiff could dispute incomplete or inaccurate information in the report. It stated: "If you believe any of the information in the report is erroneous or if you have any comments about information in your report that you feel should be taken into account by Wal-Mart in . . . making its employment decision, please provide them to the undersigned at the phone number listed." The September 1 letter then listed detailed contact information for ChoicePoint, but Plaintiff understood this letter to have been sent on behalf of (or to come from) Wal-Mart, his prospective employer. (Id.; Plaintiff's Deposition at 78-79).

As of September 6, 2005, Plaintiff had not contacted ChoicePoint to correct the September 1, 2005 letter reporting a felony conviction. (See Martin Deposition at 162-63, Exhibit "B"). Accordingly, ChoicePoint sent another letter on Wal-Mart's behalf on September 6, 2005, indicating that the conditions of his offer had not been met and stating that an offer of employment would not be made to him at that time. (See Deposition Ex. D3 (the "September 6 letter") (attached hereto as Exhibit "G")).

On September 7, 2005, Plaintiff contacted ChoicePoint to correct the report, stating that his conviction had been reduced to a misdemeanor. (See Plaintiff's Deposition at 79, 85-86). According to Plaintiff, during that September 7 phone call, ChoicePoint conducted a reinvestigation and then acknowledged that Plaintiff was correct in stating he had been convicted of a misdemeanor rather than a felony. (Id.). ChoicePoint confirmed the results of the reinvestigation in a letter to Plaintiff sent on September 7, 2005, enclosing a copy of the revised report. (See Plaintiff's Deposition at 88, 89; Deposition Ex. D5 (attached hereto as Exhibit "I")). The letter noted that the report had been revised accordingly, and that the results of the reinvestigation had been provided to Wal-Mart. (See Exhibit "I").

       **C.**      **Wal-Mart Hired Plaintiff as an Associate; He Quit Just A Few Weeks Later**

In the September 7, 2005 letter, ChoicePoint determined that Plaintiff had successfully completed his background check and was deemed "competitive," meaning that he was cleared for hire. (Id.; Martin Deposition at 161-62) (Exhibit "B"). As a result, Wal-Mart hired Plaintiff at the Newport News, Virginia location. (See Plaintiff's Deposition at 91) (Exhibit "A"). Plaintiff worked at this Wal-Mart store from September 29, 2005 to October 16, 2005, after which he voluntarily quit due to transportation difficulties brought on by a car accident. (Id. at 93-94).

### D. Wal-Mart Hired Plaintiff Again in 2007 After He Was Honest About His Previous Conviction

Plaintiff is currently employed at another Wal-Mart store located in Hampton, Virginia. (Id. at 99-100). During the 2007 hiring process, Plaintiff disclosed his misdemeanor conviction, and was hired without any difficulty, delay or need for notice and dispute related to his criminal background. (See id. at 69, 99-100; Deposition Ex. D17, attached hereto as Exhibit "H").

### III.  ARGUMENT

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper where "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party against whom a claim is asserted may move at any time for summary judgment in the party's favor. Fed. R. Civ. P. 56(b). A party moving for summary judgment may point to the lack of evidence to support his opponent's case. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Fourth Circuit has repeatedly followed the U.S. Supreme Court's admonition that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff." Ruff v. Target Stores, 226 Fed. Appx 294, 302-303 (4th Cir. 2007) (citing EEOC v. Clay Printing Co., 955 F.2d 936, 943 (4th Cir. 1992)). Indeed, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

After the moving party points to the lack of evidence to support the opposing party's case, the non-movant then bears the burden of demonstrating the presence of a genuinely contested issue of material fact. The non-movant must point to specific evidence establishing a triable dispute, and cannot rely on bare allegations in the pleadings. <u>Anderson,</u> 477 U.S. at 248; Fed. R. Civ. P. 56. The burden thus shifts to Plaintiff to support his claims.

Here, Plaintiff cannot offer <u>any</u> evidence or specific facts that would support a violation of the FCRA by Wal-Mart. There exists no genuine dispute as to material facts, and there is simply no factual or legal basis for a claim: Plaintiff had an opportunity to correct the information contained in the ChoicePoint criminal background report, he did so successfully, and Wal-Mart hired him without any prejudice. Where, as here, "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Based on the undisputed facts, the Court should grant summary judgment in favor of Wal-Mart.

**B. Wal-Mart Did Not Violate the FCRA and Plaintiff's Claim Fails as a Matter of Law**

The sole count in Plaintiff's Complaint (Dkt. #1) alleges that Wal-Mart violated 15 U.S.C. § 1681b(b)(3)(A), which provides in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this title, as prescribed by the Federal Trade Commission under section 609(c)(3).

This provision of the FCRA was designed to provide prospective employees an opportunity to challenge inaccurate information in pre-employment background check reports for valid employment reasons. <u>Obabueki v. International Business Machines Corp.,</u> 145 F. Supp.2d 371,

392 (S.D.N.Y. 2001); see also Kelchner v. Sycamore Manor Health Center, 305 F. Supp.2d 429, 435 (M.D. Pa. 2004) (recognizing Congressional imposition of special procedural requirements on employers in order to balance legitimate need of employers to obtain consumer reports to review potential employees' qualifications with privacy interests of potential employees).

Plaintiff alleges that Wal-Mart violated this provision of the FCRA because it refused to hire him without first providing him notice about the criminal background check report.[2] As the facts clearly illustrate, however, this is patently false. The statute worked as intended. See Obabueki, 145 F. Supp.2d at 392 (noting that "opportunity to discuss and dispute [consumer report] is exactly the scenario envisioned by the FCRA"). The September 1, 2005 letter to Plaintiff clearly fulfills Wal-Mart's obligation under 15 U.S.C. § 1681b(b)(3)(A), while providing notice to Plaintiff of the need to correct information in his criminal record report he believed to be inaccurate. On behalf of Wal-Mart, the company "intending to take such action," ChoicePoint provided to Plaintiff both "a copy of the report" and "a description in writing of the rights of the consumer." Wal-Mart delegated to ChoicePoint, and ChoicePoint carried out this administrative task before "any adverse action based in whole or in part on the report." 15 U.S.C. § 1681b(b)(3)(A). Indeed, as required by the FCRA, the letter explained that information contained therein was likely to have an adverse effect on Plaintiff's ability to obtain employment, and provided Plaintiff the opportunity to refute the information, which Plaintiff did successfully.[3] Although the FCRA itself does not specify how much advance notice is required,

---

[2]   For purposes of the present motion, Wal-Mart concedes that a criminal background check is a "consumer report" within the meaning of the cited provision of the FCRA.

[3]   Indeed, Plaintiff could have provided complete information in his FCRA authorization form, by choosing to disclose at that time that he had a misdemeanor conviction. As noted above, Plaintiff failed to do so (Exhibit "D"), thus contributing to the fact that Wal-Mart initially received inaccurate information from ChoicePoint regarding Plaintiff's criminal record. This raises two additional defenses that Wal-Mart preserves. First, Wal-Mart would have been fully

Wal-Mart here provided a "reasonable period to respond to any information in the report" that Plaintiff disputed. Kelchner, 305 F. Supp.2d at 435-36 (citing H.R. Rep. No. 103-486, at 30 (1994)). Moreover, Wal-Mart did not take adverse action based on the consumer report by categorically refusing to hire Plaintiff. After Plaintiff successfully refuted the report, Wal-Mart hired Plaintiff even though six days had passed since the September 1 letter was sent.[4]

In addition, Wal-Mart's delegation to ChoicePoint of the administrative task of providing Plaintiff with the results of the background check is permissible under the FCRA. The Federal Trade Commission ("FTC"), the agency empowered to enforce the FCRA, has expressly acknowledged that a party may contract with another party to deliver notice to a consumer. In a March 3, 1998, Advisory Letter regarding mortgage insurance, the FTC states that a party may meet its responsibility to notify a consumer of adverse action based on information contained in a consumer report "by contracting with a lender (or other party) to deliver the notice to the consumer." FTC Advisory Letter to Paul H. Schieber, Esq., March 3, 1998 (attached hereto as Exhibit "K"). The Advisory Letter states that in this way, parties and their clients can "arrange to comply with the FCRA without providing duplicative notices to the consumer." Id.[5]

---

within its rights to refuse to hire Plaintiff simply because he deliberately lied. (Exhibit "A" at 66). Second, Plaintiff should not benefit in the form of a recovery in this lawsuit, or be allowed to pursue a nationwide class action, solely because of his own misdeeds, especially because honesty would have prevented any of the notice issues that Plaintiff's Complaint raises. In addition, Plaintiff's failure to be honest and the defenses it raises precludes Plaintiff from maintaining this case as a class action, an issue Wal-Mart preserves for later briefing.

[4]  As a matter of law, Wal-Mart had absolutely no obligation to hire Plaintiff even though the criminal background check was revised by ChoicePoint. The FCRA only requires an opportunity to correct the information, not a guarantee of employment. Nonetheless, Wal-Mart in fact hired Plaintiff here.

[5]  FTC advisory letters are persuasive authority on FCRA issues. See, e.g., Kelchner v. Sycamore Manor Health Ctr., 305 F. Supp. 2d 429 n.7 (M.D. Pa. 2004). See also Safeco Ins. Co. v. Burr, 127 S. Ct. 2201, 2216 (2007) (recognizing that FTC opinions provide "authoritative guidance" for purposes of complying with FCRA and reliance on FTC opinions is reasonable).

Accordingly, Wal-Mart acted in full compliance with FTC guidance and the requirements imposed under the FCRA in deciding to delegate to ChoicePoint the administrative role of notifying Plaintiff about his criminal background check report.[6]  Indeed, this conclusion is compelled by the Supreme Court's recent warning against "hypernotification" in <u>Safeco Ins. Co. v. Burr</u>, 127 S. Ct. 2201, 2214 (2007) ("We think that the consequence of sending out notices on this scale would undercut the obvious policy behind the notice requirement, for notices as common as these would take on the character of formalities, and formalities tend to be ignored.").  In <u>Safeco</u>, the Supreme Court rejected several interpretations that would have resulted in superfluous and unnecessary notices in favor of meaningful notices that served the FCRA's purposes.  <u>Id.</u>  Finally, here, Plaintiff fully understood and acknowledged under oath that the September 1, 2007 "pre-adverse action letter" was sent on behalf of Wal-Mart.  (<u>See</u> Plaintiff's Deposition at 78-79).

As there no genuine dispute exists as to the material facts bearing on this motion and, on the undisputed facts, Plaintiff's claim fails as a matter of law, the conditions of Rule 56 have been met, and summary judgment "shall" be granted.  Fed. R. Civ. P. 56.  Wal-Mart submits the present Motion for Summary Judgment on the sole issue of whether a violation occurred.  Wal-Mart reserves the right to move for summary judgment on the issues of whether any violation was "willful" and whether Plaintiff suffered any damages or actual adverse action.

---

[6] It is worthy of note that Congress has amended the FCRA several times since this 1998 FTC letter.  <u>See, e.g.</u>, The Fair and Accurate Credit Transactions Act of 2003, Pub. L. 108-159 (2003).  If Congress believed that the FTC letter allowing delegation was improper or incorrect, it could have taken appropriate legislative action, but did not do so.

## IV.  CONCLUSION

For the foregoing reasons, Wal-Mart respectfully requests that this Court grant its Motion for Summary Judgment.

                                                Respectfully submitted,

                                                Wal-Mart Stores, Inc.

                                                By Counsel

MORGAN, LEWIS & BOCKIUS LLP

By:   /s/
       Thomas J. O'Brien (Va. Bar No. 23628)
       1111 Pennsylvania Avenue, NW
       Washington, DC  20004
       202.739.5186 (phone)
       202.739.3001 (fax)
       to'brien@morganlewis.com (e-mail)

       Gregory T. Parks (*pro hac vice*)
       1701 Market Street
       Philadelphia, PA 19103-2921
       215.963.5000 (phone)
       215.963.5001 (fax)
       gparks@morganlewis.com (e-mail)

Attorneys for Defendant
Wal-Mart Stores, Inc.

Dated:  December 3, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of December, 2007, I filed the foregoing Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment using the CM/ECF system and that service was thereby accomplished on:

> Leonard A. Bennett, Esq.
> Consumer Litigation Associates, P.C.
> 12515 Warwick Boulevard, Suite 100
> Newport News, VA  23606
> Phone:  (757) 930-3660
> Fax:  (757) 930-3662
> E-mail: lenbennet@clalegal.com
>
> Christopher Colt North, Esq.
> 751-A Thimble Shoals Boulevard
> Newport News, VA  23606
> Phone:  (757) 873-1010
> Fax:  (757) 873-8375
> E-mail: cnothlaw@aol.com
>
> Attorneys for Plaintiff

>                                   /s/_____
>                                   Thomas J. O'Brien (Va. Bar No. 23628)
>                                   Morgan Lewis and Bockius LLP
>                                   1111 Pennsylvania Avenue, NW
>                                   Washington, DC  20004
>                                   202.739.5186 (phone)
>                                   202.739.3001 (fax)
>                                   to'brien@morganlewis.com (e-mail)
>
>                                   Attorneys for Defendant
>                                   Wal-Mart Stores, Inc.