IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEPHEN M. BEVERLY,

Plaintiff,

v.

Civil Action Number 3:07CV469

WAL-MART STORES, INC.,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for summary judgment. The plaintiff has responded, the Court has heard oral argument, and the matter is ripe for adjudication.

## I.  FACTS

On August 18, 2005, plaintiff Stephen Beverly ("plaintiff") applied for a position as an associate at defendant, Wal-Mart Stores, Inc.("defendant")'s store in Newport News, Virginia. Plaintiff returned for an interview on August 25, 2005 and completed and signed a Fair Credit Reporting Act ("FCRA") Authorization Form notifying him that defendant would conduct a criminal background check. At the conclusion of his August 25, 2005 interview, defendant gave plaintiff a conditional job offer contingent upon plaintiff's successful completion of a criminal background check and drug screening. Defendant ordered a criminal background check from ChoicePoint Workplace Solutions ("ChoicePoint") and delegated to ChoicePoint the administrative task of providing plaintiff, on defendant's behalf, notices required under the FCRA.[1]

---

[1]The Federal Trade Commission ("FTC") has expressly acknowledged that a party may contract with another party to deliver notice to a consumer. Letter from Clarke W. Brinckerhoff to

In a letter dated September 1, 2005 ("the September 1st letter"), ChoicePoint, on behalf of defendant, notified plaintiff that his criminal background check included public record information that was "likely to have an adverse effect" on plaintiff's ability to obtain employment. ChoicePoint included a copy of the criminal background report with the letter. The letter included a statement of plaintiff's rights under the FCRA, and it explained that ChoicePoint had prepared the report for defendant. The letter also emphasized that plaintiff could dispute incomplete or inaccurate information in the report, and it provided contact information for ChoicePoint. Defendant alleges that ChoicePoint mailed the letter on September 1, 2005. On September 6, 2005, ChoicePoint sent another letter ("the September 6th letter") on defendant's behalf stating that the defendant would not make plaintiff an offer of employment at that time based in whole or in part on information in his criminal background report.

Plaintiff alleges that he received both of the aforementioned letters on September 7, 2005. On that date, plaintiff contacted ChoicePoint to correct the report. ChoicePoint reinvestigated, found that plaintiff's criminal background report contained inaccurate information, sent plaintiff a letter on September 7, 2005 noting that ChoicePoint had corrected the report, and sent the results of the reinvestigation to defendant. ChoicePoint enclosed a copy of the revised report in its letter to plaintiff. The letter also stated that plaintiff had successfully completed his background check and was cleared for hire. Defendant hired plaintiff to work at its Newport News store at the end of September.

---

Paul H. Schieber (March 3, 1998), FTC Informal Staff Letter.

   The FTC provides informal staff opinion letters guiding interpretation of the FCRA. Congress has granted the FTC the authority to prescribe trade regulation rules and other rules in relation to the FCRA. Pub. L. No. 106-102, 113 Stat. 1338 (Nov. 12, 1999).

Plaintiff seeks statutory damages, punitive damages, and other relief under the FCRA, 15 U.S.C. § 1681, et seq.,[2] alleging defendant unlawfully used an inaccurate consumer report[3] of plaintiff that it obtained from ChoicePoint to deny plaintiff employment.  Plaintiff further alleges that defendant failed to comply with the FCRA's procedures and requirements.   Defendant has moved for summary judgment, claiming that plaintiff cannot offer any evidence or specific facts that would support a violation of th FCRA by Wal-Mart.

## II.  LEGAL ANALYSIS

The standard for assessing summary judgment motions is well-established.   Summary judgment is proper only when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination, the Court may rely upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed. R. Civ. P. 56(c).

A fact is material when proof of its existence or nonexistence would affect the outcome of the case and is in dispute "when its existence or non-existence could lead a jury to different outcomes."   Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001).  A party cannot,

---

[2]In the present matter, plaintiff proceeds only under 15 U.S.C. § 1681(n), pursuant to which "[A] plaintiff who has proven that the defendant willfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages." Williams v. LexisNexis Risk Mgmt., Inc., Slip Copy, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (quoting Owner-Operator Indep. Driver Ass'n. Inc. v. USIS Commercial Servs., Inc., 2006 WL 2164661, *2 (D.Colo. July 31, 2006).  Defendant concedes that statutory damages may be available for a willful violation.  Since defendant has not moved for summary judgment on the question of whether or not it "willfully"violated the FCRA, the Court will not address that question at this time.

[3]For purposes of plaintiff's motion for summary judgment, the parties agree that a criminal background check is a "consumer report" within the meaning of the cited provisions of the FCRA.

however, "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

The nonmoving party is entitled to have his version of all that is disputed accepted, all conflicts resolved in his favor, and to have the benefit of all favorable legal theories invoked by the evidence. M&M Med. Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992). The party who bears the burden of proof on an issue at trial cannot, however, survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Plaintiff alleges that defendant violated the FCRA, 15 U.S.C. § 1681b(b)(3)(A), which states:

> (3) Conditions on use for adverse actions.
> (A) In general.
> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates-
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681(g)(c)(3) of this title.

15 U.S.C. § 1681b(b)(3)(A). According to plaintiff, defendant took adverse action against him based on his criminal background report before it had provided him with a copy of the report. Plaintiff contends that the adverse action occurred when ChoicePoint, on behalf of defendant, sent plaintiff the September 6th letter stating that the defendant would not make plaintiff an offer of employment at that time based in whole or in part on information in his criminal background report. Plaintiff alleges that he received a copy of his consumer report the same day he received the letter notifying him that defendant would not offer him employment. Defendant argues that it did not take adverse action based on plaintiff's consumer report since it hired plaintiff after he successfully refuted the

inaccuracies in the report.  Defendant also argues that it met the 15 U.S.C. § 1681b(b)(3)(A) requirements since ChoicePoint, on behalf of defendant, mailed plaintiff a copy of his consumer report, allegedly on September 1, 2005, and plaintiff subsequently had an opportunity to dispute any inaccurate information.

**A.      Adverse Action**

Turning first to the question of whether defendant took adverse action against plaintiff, 15 U.S.C. § 1681a(k)(1)(B)(ii) defines the term "adverse action" in regard to employment as, "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."  The September 6th letter sent by ChoicePoint on behalf of defendant and addressed to plaintiff stated, "This letter is to inform you that an offer of employment will not be made to you at this time.  This decision was based, either in whole or in part, on information provided to us in a Consumer Report or Investigative Consumer Report." (Def.'s Ex. G ¶ 1.)  The letter closed by stating, "Because you previously had the opportunity to dispute the information in the report, any dispute will not affect Wal-Mart's decision at this time."  (Def.'s Ex. G ¶ 4.)  The language in defendant's letter clearly denies plaintiff employment and fits easily within § 1681a(k)(1)(B)(ii)'s definition of "adverse action."

Defendant argues that the definition of adverse action refers to the action that is taken rather than the subjective contemplation of the employer as to a possible or tentative adverse employment decision.  Obabueki v. Int'l Bus. Machines Corp., 145 F. Supp.2d 371, 392 (S.D.N.Y. 2001). Defendant seems to contend that the September 6th letter conveyed a "subjective contemplation of the employer as to a possible or tentative adverse employment decision" since defendant hired plaintiff some time after plaintiff corrected the inaccuracies in his consumer report.  However, the

language in defendant's letter does not convey a subjective contemplation or a tentative adverse decision, but indicates a firm decision to deny plaintiff employment, even despite any dispute plaintiff might make.  The evidence plainly shows that, as a matter of law, defendant took an adverse action, within the meaning of § 1681a(k)(1)(B)(ii), against plaintiff.

**B.     Failure to Provide a Copy of Consumer Report Before Taking Adverse Action**

The Court next addresses whether a reasonable jury could find that defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse action before it provided plaintiff with a copy of his consumer report.  The statutory purpose of §1681b(b)(3)(A) is to enable an employee applicant to receive his draft report and correct any of inaccurate information in the report before any decision or action is commenced.  Kelchner v. Sycamore Manor Health Center, 305 F.Supp.2d 429, 435 (M.D.Pa. 2004).  The FTC, the agency empowered to enforce the FCRA, stresses that  "dispute rights are among the most important the FCRA gives to consumers."  Letter from Clarke W. Brinckerhoff to Eric J. Weisberg (June 27, 1997), FTC Informal Staff Letter.  Although the law does not specify the amount of time that must elapse between a consumer's receipt of a copy of his consumer report and the employer's adverse action, a court in this district and division found that the employer must provide a copy of the report "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report."  Williams v. Telespectrum, Civ. No. 3:05cv853 (E.D. Va. 2006) November 7, 2006 *adopted* by Judge R. Payne January 8, 2005.  The employer must "provide the consumer with a reasonable period to respond" after receiving the consumer report.  Kelchner, 305 F.Supp.2d at 435.

The parties dispute whether ChoicePoint, on behalf of defendant, actually mailed the September 1st letter to plaintiff along with a copy of plaintiff's consumer report on September 1,

2005.  Plaintiff alleges, and defendant does not clearly dispute,  that he did not receive the September 1st letter and the enclosed copy of his consumer report until September 7, 2005, the same day he received the September 6th letter notifying him of defendant's adverse action.  Even if the Court views the evidence in the light most favorable to defendant and agrees that defendant mailed the September 1st letter and the copy of plaintiff's consumer report on September 1, a reasonable jury could conclude that defendant sent the September 6th letter too quickly after it sent the September 1st letter.  The Court notes that the Labor Day holiday fell on Monday, September 5, 2005, and defendant should have been aware that the holiday would result in a mail delivery delay.  If plaintiff received the September 6th letter notifying him of defendant's adverse action at the same time he received the copy of his consumer report, he necessarily did not have a sufficient or reasonable period of time to dispute the inaccuracies in his consumer report before defendant took adverse action.  "Simultaneous provision"  of a consumer report with a notice of adverse action fails to satisfy the §1681b(b)(3)(A) requirement.  Williams, Civ. No. 3:05cv853 at 10.  Accordingly, the Court finds that a reasonable jury could find that defendant violated § 1681b(b)(3)(A) when it took adverse action before it provided plaintiff with a copy of his consumer report.  Therefore, defendant is not entitled to summary judgment as a matter of law.

For these reasons, the Court will deny the defendant's motion for summary judgment.

An appropriate Order shall issue.


January 11, 2008                    _____/s/_____
DATE                                     RICHARD L. WILLIAMS
                                              SENIOR UNITED STATES DISTRICT JUDGE