# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

STEPHEN M. BEVERLY,                  |
                                     |
     Plaintiff,                   |
                                     |
v.                                   |         Civil Action No. 3:07cv469
                                     |
WAL-MART STORES, INC.,               |
                                     |
     Defendant.                   |

_____

STEPHEN M. BEVERLY, *et al.,*         |
                                     |
     Plaintiffs,                  |
                                     |
v.                                   |         Civil Action No. 3:07cv541
                                     |
CHOICEPOINT INC., *et al.*,           |
                                     |
     Defendants.                  |


## MEMORANDUM IN SUPPORT OF MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT, MOTION TO CONSOLIDATE
## CASES FOR SETTLEMENT AND MOTION TO AMEND COMPLAINTS

COME NOW the Plaintiffs, by counsel, and in support of the Joint Motion for

Preliminary Approval of Settlement, Consent Motion to Consolidate Cases for Settlement and

Consent Motion to Amend Complaints, and state as follows:

## I.
### INTRODUCTION

Stephen M. Beverly commenced litigation (the "Wal-Mart Litigation") against Defendant

Wal-Mart Stores, Inc. ("Wal-Mart") in the United States District Court for the Eastern District of

Virginia, Richmond Division, Civil Action No. 3:07cv469; and Beverly and Bruce J. Smith

("Named Plaintiffs") commenced litigation (the "ChoicePoint Litigation") against Defendants

ChoicePoint Inc. and ChoicePoint Workplace Solutions Inc. (collectively, "ChoicePoint") in the

United States District Court for the Eastern District of Virginia, Richmond Division, Civil

Action No. 3:07cv541.  The parties to both of these actions have reached a settlement of class

claims (the "Proposed Settlement") negotiated through the direct intervention and supervision of

Magistrate Judges Dohnal and Lauck.

The Proposed Settlement was the product of arm's-length negotiations between

experienced counsel that took place after more than a year of litigation and months of intensive

discovery and multiple negotiation sessions, in person and by telephone with the Magistrate

Judges as well as in multiple additional sessions solely between the parties.  As explained below,

the Settlement is an excellent result for the Classes in that it provides relief of genuine value

without the risks of extended litigation.   The Plaintiffs, with Defendants' consent, moves the

Court to (1) grant preliminary approval to the Proposed Settlement, (2) approve the Proposed

Class Notices, (3) order that the Notices be distributed to Class Members, (4) approve the hiring

at Defendants' expense of a Notice Administrator, (5) approve Defendants' notice under the

Class Action Fairness Act, and (6) set the Final Approval hearing.   In addition, the Plaintiffs,

with Defendants' consent, moves the court to enter an order consolidating the ChoicePoint

Litigation and the Wal-Mart Litigation for purposes of settlement, and enter an order allowing

the filing of amended Complaints.

## II.
## BACKGROUND OF THE CASES

### A.    Plaintiffs' Claims

Beverly filed a Class Action Complaint in the Wal-Mart Litigation that alleged that Wal-

Mart violated the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*,

specifically 15 U.S.C. § 1681b(b).  He alleged that Wal-Mart used his and other putative class members' consumer reports in processing employment applications without providing timely notice under the FCRA of its intent to do so.  The Plaintiff alleged that the FCRA requirement that notice be delivered "before" taking an adverse action required at least five business days in order to be reasonable and thus lawful.  Wal-Mart denies these allegations.

Shortly after commencing the Wal-Mart Litigation, the Named Plaintiffs also filed a second Class Action Complaint, this one against ChoicePoint alleging that it violated the FCRA by the timing with which it provided a notice to consumers that it was furnishing a consumer report (a criminal background check) "at the time" it did so, and other alleged FCRA violations. The Plaintiffs' Amended Complaint alleges that ChoicePoint violated 15 U.S.C. §1681k. ChoicePoint denies these allegations.

**B.     The State of Litigation and the Settlement Negotiations**

The Parties began both formal and informal discovery early in this matter on nearly all issues.  Significant formal discovery was nearly completed in the Wal-Mart Litigation and both corporate and expert depositions completed significant written discovery by Interrogatories and Document Production.   Discovery was sufficiently significant that when the later filed ChoicePoint litigation became ripe, Plaintiffs' counsel had already completed enough discovery of the interrelated systems and events in the two cases and between the two defendants in order to fully assess the strengths and weaknesses of both cases.

The Parties also engaged in productive settlement talks during this time, all of which required extensive preparation, and since certification all of which were usefully attended by nearly every attorney of record in the case.   Settlement discussions were not initially commenced.  Instead, as the parties had significant differences about the facts, law and value of

the cases, such discussions would have been premature.   Accordingly, the first settlement conference in the Wal-Mart Litigation was held only after the Court had denied Wal-Mart's Rule 56 motion and after the parties had conducted sufficient written and deposition discovery.   Over the duration of the Wal-Mart Litigation, there were at least a dozen communications and multiple in person conferences with Magistrate Judge Lauck.   In addition to litigation counsel, management representatives of Wal-Mart also attended at least one of these sessions in person.

Similarly, the settlement with ChoicePoint was accomplished through the direct involvement of Magistrate Judge Dohnal.   The basic terms of settlement were negotiated directly with the Judge and took at least a full day of his involvement and supervision and follow up among counsel.   After settlement with ChoicePoint became possible, settlement with Wal-Mart occurred with the continuing involvement of ChoicePoint's own attorneys, including its General Counsel.   Settlement involved the Defendants and at least six of their attorneys.   It was hard-fought and negotiated between informed opponents otherwise at odds for the entire litigation.

The Parties now ask the Court to preliminarily approve the Proposed Settlement and authorize distribution of Settlement Notices to the Classes.

## C.     Proposed Settlement and Release Terms

The principal terms of the Proposed Settlement and Release, attached as Exhibit A, are:

### 1.     The Classes Defined

*a.     Wal-Mart Class.*   The "Wal-Mart Class" is defined in the Amended Complaint as follows:

> All natural persons residing in the United States or its territories to whom, per ChoicePoint WorkPlace Solutions Inc.'s records, a notice was mailed by ChoicePoint WorkPlace Solutions Inc. on behalf of Wal-Mart Stores, Inc. pursuant to 15 U.S.C. § 1681b(b) on or after August 10, 2005 through February 20, 2008.

       ***b.***    ***ChoicePoint Class.***  The "ChoicePoint Class" is defined in the Amended Complaint as follows:

> All natural persons residing in the United States or its territories to whom, per ChoicePoint WorkPlace Solutions Inc.'s records, a notice was mailed by ChoicePoint WorkPlace Solutions Inc. pursuant to 15 U.S.C. § 1681k on or after August 10, 2005 through February 20, 2008 as a result of a request for an employment background check by either Target Corp. or Wal-Mart Stores, Inc.

**2.**     **Relief to the Classes**

       ***a.***    ***Wal-Mart Class.***  The Parties have agreed that ChoicePoint, on behalf of Wal-Mart, shall be responsible for payment, into a fund to be equally distributed among the members of the Wal-Mart Class, the sum of $4,000,000.00. Defendants' records show that the Wal-Mart Class consists of approximately 74,000 members, entitling each member to about, but not more than, $54 from the Settlement. The Settlement contemplates that Class Counsel will make an application to the Court for an award of attorneys' fees, costs and other expenses in an amount not to exceed Thirty Percent (30%) of the Common Fund. ChoicePoint, on behalf of Wal-Mart, is responsible to pay all but $100,000 of notice and administrative costs.

       ***b.***    ***ChoicePoint Class.***  Separate and apart from the relief for the Wal-Mart Class, ChoicePoint has agreed to pay $2,890,000.00 into a common fund for the ChoicePoint Class. ChoicePoint's records show that the ChoicePoint Class consists of approximately 120,000 members, entitling each member to about $25 from the Settlement. The Settlement contemplates that Class Counsel will make an application to the Court for an award of attorneys' fees, costs

and other expenses in an amount not to exceed thirty percent (30%) of the Common Fund. ChoicePoint is responsible to pay all notice and administrative costs.

### 3.     Release of Claims

Defendants admit no wrongdoing as Plaintiffs allege, but enters into this Settlement to avoid the costs of further litigation.  The Parties have agreed to language releasing Defendants from claims relating to violations of 15 U.S.C. §§ 1681b and 1681k as alleged in the Amended Class Complaints.

### 4.     Notice to the Class

The Parties have agreed to a notice program designed to reach as many Class Members as possible.  The Parties will provide direct-mail Notice to the Classes, First Class, postage prepaid,.  The names and addresses for that Notice came from the information provided by the class members when they completed employment applications. They will also be updated and checked against the United States Postal Service's National Change of Address database.  In the event that a class member cannot be reached in this manner, ChoicePoint has also agreed to perform a further public records database search for an alternate address.

A copy of each Class' Settlement Notice is attached.  The Settlement Notices will include a toll-free number and website address Class Members can consult to get additional information regarding the Settlement.  The Notice Administrator shall be responsible for maintaining the toll-free number and Internet website.  The Supreme Court has concluded that notice sent by first class mail to each class member satisfies due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985).

The website operated by the Settlement Administrator will:  (1) enable Settlement Class Members to access and download the Class Notice; (2) enable Settlement Class Members to

download an exclusion form, (3) provide a list of critical dates and deadlines in the settlement process; and (4) provide relevant updates and information with respect to the settlement and approval process.

Finally, Defendants have agreed to be solely responsible for making all payments necessary to effectuate sending of the Settlement Notices and associated costs, including maintenance of the toll-free number and Internet website, over and above $100,000.

### 5.      Class Action Fairness Act Notice

Defendants will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  The CAFA Notice will be sent via overnight courier to the Attorney General of the United States and to the attorneys general of all states and United States territories where Class Members reside.  The CAFA Notice will be sent within 10 days after the filing of the Settlement Agreement with the Court.

### 6.      Incentive Awards and Attorneys' Fees and Expenses

Plaintiffs will apply for incentive awards for Class Representatives to compensate them for their efforts in prosecuting this case including retaining counsel, assisting in discovery, and keeping abreast of the litigation.  Defendants agree not to oppose the application for the incentive awards, provided that the awards do not exceed $500 for each Class Representative.

In order to best represent the Class' interests, the parties exclusively focused on achieving a settlement and pointedly did not negotiate or even address the issue of attorneys' fees and expenses (or incentive awards) before reaching agreement on all material settlement terms. Accordingly, the Settlement Agreement and Release provides that:  (1) Class Counsel shall apply to the Court for an award of attorneys' fees and reimbursement of reasonable expenses, and (2)

Class Counsel agree not to seek fees or costs in excess of the agreed-upon percentage of the common funds.

## III.
## AUTHORITIES

### A.    Preliminary Approval Standards

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").   Federal Rule of Civil Procedure 23 requires Court review and approval of the resolution of a class action such as this one.   Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e).   Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations.   *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).   The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).   Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).   Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991)).

The Fourth Circuit employs a bifurcated analysis for Rule 23(e) approval, mandating that the Court separately consider the fairness of the settlement from its adequacy. *See In re Jiffy Lube*, 927 F.2d at 158-59. Regarding fairness, the Court must evaluate the Settlement against the following criteria: (1) the posture of the case when the settlement was reached, (2) the extent of discovery conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of class counsel in the area of the litigation. *Id.* at 159. The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.*

The Court should then consider the Settlement's adequacy in light of "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* In this case, each set of factors weighs in favor of approving the Settlement.

**B.    The Court Should Approve the Settlement Because It Meets the Fairness Requirement**

The Parties agreed to settle only after conducting significant merits-related discovery and vigorously contesting the litigation. The Parties have also conducted extensive settlement talks, including settlement conferences before Magistrate Judges Dohnal and Lauck. The fact that the Parties have actively litigated the case, including Wal-Mart's dispositive motion and ChoicePoint's venue challenge and mediated on several occasions, favors preliminary approval of the Proposed Settlement. *See In re Micro Strategy, Inc.*, 148 F. Supp. 2d at 664 (approving of proposed settlement despite the fact that it was reached "early" in the litigation in part because the settlement came after the parties vigorously contested defendant's motion to dismiss).

The Parties also reached the Proposed Settlement after sufficient and significant discovery had been completed, both formally and informally.  As noted above, in the Wal-Mart case the Parties took depositions and exchanged and analyzed a significant volume of documents.  In both cases, the parties exchanged sufficient information to allow a comprehensive evaluation of such discreet claims.  Discovery of this magnitude and particularity also favors approval of the Settlement.  *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D.N.C. 1994).

There is absolutely nothing in this case to indicate that the Proposed Settlement resulted from anything other than contested, arm's-length negotiations between Plaintiffs and Defendants. The Parties did not begin to negotiate attorneys' fees before reaching the principal settlement points.  Based on these facts, the Court should conclude the Proposed Settlement is fair.  *See S. Carolina Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

Furthermore, experienced counsel negotiated the Settlement, making their first priority bringing the best benefit possible to the Classes.  Class Counsel has extensive experience in both FCRA and class action litigation, having been involved in several large FCRA class actions. Proposed Lead Class Counsel was objectively selected as Top 500 Plaintiff's attorneys in the nation, in significant part because of their success in FCRA class action litigation.[1]   The Parties also engaged in substantial discovery, which was sufficient to aid Counsel and the Court in evaluating Plaintiffs' claims and Defendants' defenses.   These facts further point to the conclusion that the Proposed Settlement was the product of arm's-length negotiation by

---

[1] *See* www.lawdragon.com.

experienced counsel and thus warrants preliminary approval. *See In re Jiffy Lube*, 927 F.2d at 159; *see also Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (concluding fairness requirement met where "plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class").

**C.     The Court Should Grant Preliminary Approval Because the Settlement Also Meets the Fourth Circuit's Adequacy Strictures**

**1.     Plaintiffs' claims are heavily disputed**

Defendants have disputed Plaintiffs' claims since the inception of this case.  Because Plaintiffs limited the Class claims only to statutory and punitive damages, any recovery for the Class must be predicated on a finding that Defendants willfully violated the FCRA.  *See* 15 U.S.C. § 1681n(a).  Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, *Safeco Insurance Company of America v. Burr*, 127 S. Ct. 2201, 2208 (2007), Plaintiffs here are still faced with the burden of proving Defendants' conduct was indeed reckless.  This burden is magnified by the fact that Plaintiffs' claims here

— whether notices sent up to several days late — would be sufficient to allow a recovery of statutory and punitive damages.

**2.     Continuing this litigation will result in significant additional and unjustifiable burdens on the class, Defendant and the Court.**

Aside from the potential that either side will lose at trial, the Parties anticipate incurring substantial additional costs in pursuing this litigation further.  The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if

successful an inevitable interlocutory appeal attempt.  Thus, the likelihood of substantial future costs favors approving the Proposed Settlement.  *Horton*, 855 F. Supp. at 833.

>       3.       **Class Member reaction to the Settlement is not available at this time**

Because Class Members have yet to receive notice of the Proposed Settlement, their reaction cannot yet be gauged.  However, despite the size of the primary class to date no consumer has filed or is pursuing his or her own individual claim for the targeted FCRA violations.

## IV. CONSOLIDATION AND AMENDED COMPLAINTS

The Parties have also moved to allow the filing of Plaintiffs' proposed Amended Complaints.  These remove claims and allegations no longer at issue in the case and correct the class definitions to conform to the time period addressed in settlement.

Further, the Parties ask the Court to consolidate the two cases for settlement.  This will permit a coherent and resource frugal disposition and notice of settlement and allow the Court to – properly – address the settlement in the manner it was finally negotiated – collectively between the Defendants.

## V. CONCLUSION

The Parties have reached a Settlement in this case that provides genuine relief to Class Members.  The Settlement is an excellent result considering the contentiousness of the litigation and the novelty of Plaintiffs' claims.  Each Class Member will be entitled to a cash award as a result of the Proposed Settlement, regardless of whether they were aware the Defendants' conduct potentially violated the FCRA or whether they suffered actual harm.  In addition, the terms of the Proposed Settlement as well as the circumstances surrounding negotiations and its

elimination of further costs caused by litigating this case through trial and appeal satisfy the Fourth Circuit's strictures for preliminary approval.

Accordingly, the Parties ask the Court for an Order, substantially similar to the Proposed Order filed concurrently with this Motion, that:

(1)     Grants preliminary approval to the Proposed Settlement;

(2)     Approves of the Proposed Notices filed concurrently with this Motion;

(3)     Orders that the Proposed Notices be immediately mailed to Class Members;

(4)     Approves the appointment of Notice Administrator;

(5)     Approves Defendants' Class Action Fairness Act notice; and

(6)     Sets the date of the Final Fairness Hearing at the Court's earliest availability.

STEPHEN M. BEVERLY and BRUCE J. SMITH individually and on
behalf of similarly situated individuals.


_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

Matthew J. Erausquin, Esq.
VSB #65434
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, Virginia 22030
Phone: (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com

Christopher Colt North, Esq.
VSB #16955
Attorney for Plaintiff
751-A Thimble Shoals Boulevard
Newport News, Virginia  23606
Phone: (757) 873-1010
Fax: (757) 873-8375
cnorthlaw@aol.com

*COUNSEL FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

I hereby certify that on this  17th  day of  November, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Alan D. Wingfield, Esquire
David N. Anthony, Esquire
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
E-mail: david.anthony@troutmansanders.com
E-mail: alan.wingfield@troutmansanders.com

Gregory T. Parks, Esquire
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
gparks@morganlewis.com

*COUNSEL FOR DEFENDANTS*

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

Matthew J. Erausquin, Esq.
VSB #65434
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, Virginia 22030
Phone: (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com

Christopher Colt North, Esq.
VSB #16955
Attorney for Plaintiff
751-A Thimble Shoals Boulevard
Newport News, Virginia  23606
Phone: (757) 873-1010
Fax: (757) 873-8375
cnorthlaw@aol.com

1769689v1